## MARSHALL *v.* KNOX.

1. The District Court sitting in bankruptcy has no jurisdiction to proceed by rule to take goods seized, before any act of bankruptcy by the lessees, for rent due by them in Louisiana, under "a writ of provisional seizure"—and then in the hands of the sheriff, and held by him as a pledge for the payment of rent due—out of his hands, and to deliver them to the assignee in bankruptcy to be disposed of under the orders of the bankrupt court; neither the sheriff nor the lessor having been parties to the proceedings in bankruptcy nor served with process to make them such.

2. The Circuit Court may under the second section of the Bankrupt Act entertain on bill as an original proceeding, a case thus involving a question of adverse interest in goods so seized.

3. Under the Civil Code of Louisiana, a lessor has a right to seize, for rent in arrears, goods on the premises, and until he is paid his rent, retain them as against an assignee in bankruptcy subsequently occurring

4. In such a case where the goods have been taken out of his hands and given to the assignee in bankruptcy, by an order of the District Court acting summarily and without jurisdiction, and sold by such assignee, the Circuit Court, having got possession of the case by bill filed by the lessor, to be regarded as one in an original proceeding, will proceed and decide the whole controversy.

5. And it will give the lessor the full value of the goods sold clear of all expenses, whether the assignee obtained that value or not (limited, of course, by the amount of rent which he is entitled to have paid to him), and also to all the taxable costs to which he has been put by the litiga-

tion. Damages beyond this refused as hardly due in the particular case, and at any rate more properly to be claimed in a proceeding at law.

Appeal from the Circuit Court for the District of Louisiana; the case being thus:

Marshall was the owner of a plantation in the parish of Avoyelles, in Louisiana, and on the 7th of February, 1867, leased it to Nathan Smith and Henry Fuller for three years, from January 1st, 1867, at $3000 a year, payable in two equal payments. At the end of the first year the tenants were in arrear $1400, and on the 4th of January, 1868, Marshall commenced an action therefor in the District Court of the parish, and applied for and obtained a writ of provisional seizure (as it is called), being the usual process by which a lessor takes possession of his lessee's property found on the premises, for the purpose of enforcing his lien thereon. This writ was served by the sheriff on the 6th of January, 1868, by serving a copy on the lessees, and by a seizure of their property on the land, consisting of mules, wagons, farming implements, and stock, grain, furniture, &c., appraised at $1744.

On the 15th of January, 1868, Smith, one of the lessees, filed in the District Court of the United States for Louisiana a petition to be declared a bankrupt, and was declared such accordingly; and on the 12th of February, 1868, the defendants were appointed his assignees. The controversy in this case arose from the proceedings undertaken by the assignees to take the property aforesaid out of the hands of the sheriff, and to dispose of it under the orders of the bankrupt court. They first obtained from the court a rule upon the lessor and the sheriff to show cause why they should not deliver up the property to the assignees, alleging that various creditors of the bankrupt claimed a privilege on the property, and that it was necessary for a proper adjustment of all claims, privileges, and liens, that the possession should be surrendered to the assignees, to be subject to the bankrupt court. The lessor contested this rule, stated his own rights and proceedings, and claimed possession of the prop-

erty through the sheriff, for the purpose of selling the same to raise the amount of his rent. The rule, however, was made absolute, without, so far as appeared, any other proof on the subject. The lessor appealed, but the district judge would not allow the appeal, and there was no justice of this court at that time (April, 1868) assigned to that circuit to whom application could be made. The lessor thereupon filed a bill, the present bill, in the court below for an injunction to prohibit the assignees from proceeding under the said order of the bankrupt court, and from taking possession of the property, and for a decree that they be directed to pursue any residuary interest of the bankrupt in the lessor's suit in the District Court of the parish, and not molest him in detaining and subjecting the property to the payment of his rent, and for further relief. Failing to obtain a preliminary injunction, and the property being taken and sold by the assignees, the lessor filed a supplemental bill, complaining of the illegality of the proceedings, asking for a review of the same, and for an account and damages. The bill and supplemental bill set out the lease, the provisional seizure, the proceedings in the bankrupt court, and the acts of the assignees; and complained that the lessor was injured by a sacrifice of the property; and stated that before filing the original bill he had offered the assignees a bond, with sufficient sureties, to protect any persons claiming any superior liens to his on the property, if any such there were, which, however, he denied.

The defendants, in their answer, alleged that the lessees had a counter claim for repairs and permanent improvements, and that a number of hands employed on the plantation had a privilege for their wages superior to that of the lessor; but no proof of these facts was offered in the case.

The principal allegations of the complainant were proved, and the defendants on their part adduced proof to show that they had acted in good faith under the orders of the bankrupt court, and that they had sold the property fairly, and held the proceeds for distribution, according to the rights of the parties in due course of the bankruptcy proceedings.

On hearing, the bill was dismissed for want of jurisdiction; and Marshall, the lessor and complainant, appealed.

Three questions now came before this court:

1st. Was this decree dismissing the bill for want of jurisdiction rightly made? Ought not the court below contrariwise, to have entertained the case and decided it on its merits?

2d. Supposing that it ought to have done so, how stood the case on the merits? and

3d. If these were with the complainant, what relief ought he to have?

*Messrs. E. T. Merrick and G. W. Race, for the appellant; no opposing counsel.*

Mr. Justice BRADLEY delivered the opinion of the court.

The first question is, whether the decree dismissing the bill for want of jurisdiction was rightly made, and this is to be solved by reference to the second section of the Bankrupt Act. By this section it is declared that the Circuit Courts "shall have a general superintendence and jurisdiction of all cases and questions arising under this act; and, except when special provision is otherwise made, may, upon bill, petition, or other proper process, of any party aggrieved, hear and determine the case as in a court of equity." By a subsequent clause of the same section it is declared that said courts "shall have concurrent jurisdiction with the District Courts . . . of all suits at law or in equity . . . by the assignee against any person claiming an adverse interest, or by such person against such assignee, touching any property, or rights of property, of said bankrupt, transferable to or vested in such assignee."

The first clause confers upon the Circuit Courts that supervisory jurisdiction which may be exercised in a summary manner, in term or vacation, in court or at chambers, and upon the exercise of which this court has decided that it has no appellate jurisdiction.*

* Morgan *v.* Thornhill, 11 Wallace, 65.

The second clause confers jurisdiction by regular suit, either at law or in equity, in the cases specified; that is, in controversies between the assignee and persons claiming an adverse interest, touching any property of the bankrupt.

The present case is in form a regular bill in equity; but it also asks a revision of the action of the District Court in the premises. As an original bill in equity it cannot stand, if the District Court had jurisdiction to proceed as it did; for the matter was already decided in that court. As a bill to review the proceedings and decision of the District Court, it was a very proper proceeding, and ought to have been entertained by the Circuit Court. The revisory jurisdiction of the Circuit Court may be exercised by bill as well as by petition; and as this bill complains of the action of the District Court, and asks for a review and reversal thereof, the Circuit Court erred in dismissing it for want of jurisdiction. But regarded as a bill of review, we could not, according to our decision in *Morgan* v. *Thornhill*, entertain an appeal from the decision of the Circuit Court in the case.

The appeal, therefore, must be dismissed, unless it can be shown that the District Court proceeded without jurisdiction. If this were the case, then the bill may be regarded as an original bill, of which the Circuit Court clearly had jurisdiction, and the appeal to this court was properly taken.

The case here, then, depends on the question whether the District Court had jurisdiction to proceed by rule as it did. The goods, it has been seen, were in the custody of the sheriff, under a writ of provisional seizure, and held as a pledge for the rent of the lessor. The seizure had been made before the bankruptcy. The landlord claimed the right thus to hold possession of them until his claim for rent was satisfied. This claim was adverse to that of the assignee. The case presented was one of conflicting claims to the possession of goods; and the sheriff had present possession for the benefit of the lessor. Neither the sheriff nor the lessor was a party to the proceedings in bankruptcy. No process had been served upon them to make them such.

They were not before the court; and the court had no control or jurisdiction over them.

Under these circumstances the assignees applied for and obtained from the District Court, a rule on the lessor and sheriff to deliver the goods to them. Had the court authority to make such a rule? Could such a rule be characterized as due process of law?

The bankrupt law does not distinguish in what cases the District Court may proceed summarily, and in what cases by plenary suit; and we are left to decide the question on the general principles that affect the case. The second section, however, in conferring jurisdiction on the Circuit Courts, uses this language: " Said Circuit Courts shall also have concurrent jurisdiction with the District Courts of the same district of *all suits at law or in equity,* which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property or rights of property of said bankrupt." This language seems to indicate that where there is a claim to an adverse interest in the property, a suit at law or in equity will be the mode of redress properly resorted to. The eighth section, in granting appeals and writs of error from the District to the Circuit Court, only does so in cases in equity and at law, and in cases where the claim of a creditor is allowed or rejected. If, therefore, adverse claims to property could be decided by the summary action of the District Court, not only would the party claiming adversely to the assignee be deprived of a trial by due process of law, but he would be without appeal. An appeal was in fact denied in this case.

We think that it could not have been the intention of Congress thus to deprive parties claiming property, of which they were in possession, of the usual processes of the law in defence of their rights.

The subject, in one of its aspects, came before this court in the case of *Smith* v. *Mason,* reported in 14 Wallace, 419. In that case the adverse claim was to the absolute property of the fund in dispute; not, as in this, to a mere lien, and

to possession by way of pledge under the lien; and we held that the bankrupt court could not, by a mere rule, make the adverse claimant a party to the bankruptcy proceedings and adjudge his right in a summary way, but that the assignee must litigate the claim in a plenary suit, either at law or in equity. But it may, with some plausibility, be said that, as the property in this case is conceded to be in the bankrupt, and the question has respect only to the right of possession under the lien, the District Court, which has express jurisdiction of the "ascertainment and liquidation of the liens and other specific claims" on the bankrupt's property, might properly assume control of the property itself. The claim, however, is to the right of possession, and that right may be just as absolute and just as essential to the interests of the claimant as the right of property in the thing itself, and is, in fact, a species of property in the thing just as much the subject of litigation as the thing itself. It is the opinion of the court, therefore, that the case is not substantially different from that of *Smith* v. *Mason*. Besides, it has another point, in common with that case, upon which a direct adjudication was made therein. The lessor in this case was not a party to the bankrupt proceeding; and in *Smith* v. *Mason* we held expressly that "strangers to the proceedings in bankruptcy, not served with process, and who have not voluntarily appeared and become parties to such litigation, cannot be compelled to come into court under a petition for a rule to show cause."

The court is of opinion, therefore, that the District Court proceeded without jurisdiction in compelling the lessor and the sheriff, under a rule to show cause, to deliver up possession of the goods in question to the assignees. It results that the bill in this case was properly filed as an original bill, and on that account should not have been dismissed as for want of jurisdiction. The case should have been heard and decided upon the merits.

We are then brought to the question of merits. If the complainant had no right to hold the goods, notwithstand

ing his claim to hold them, in an action at law against the assignee he could have recovered only nominal damages; and, coming into a court of equity for redress, and praying for an account of the value of the goods, and for damages, if it turn out that he had no right to withhold the goods from the possession of the assignee, the court would be very reluctant to compel the latter to place the value of the goods in his hands to be relitigated in another suit. A court of equity having got possession of the case by the lessor's own act, must proceed to decide the whole merits of the controversy.

But we think it very clear that the complainant had a right to the possession which he claimed. The fourteenth section of the Bankrupt Act, it is true, vests in the assignees all the property and estate of the bankrupt, "although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of such proceedings." But this clause evidently refers to those cases of original process of attachment, which only become perfected liens by the judgment which may ensue. The lessor's lien for rent on the goods of his tenant situate on the premises is one of the strongest and most favored in the law of Louisiana. The articles of the Civil Code use the following language:

"The lessor has for the payment of his rent and other obligations of the lease, a right of pledge on the movable effects of the lessee which are found on the property leased."*

"In the exercise of this right the lessor may seize the objects which are the subject of it before the lessee takes them away, or within fifteen days after they are taken away, if they continue to be the property of the lessee, and can be identified."†

"The right which the lessor has over the products of the estate, and on the movables which are found on the place

* Article 2675.          † Article 2679.

leased, for his rent, is of a higher nature than mere privilege. The latter is only enforced on the price arising from the sale of movables to which it applies. It does not enable the creditor to take or keep the effects themselves specially. The lessor, on the contrary, may take the effects themselves and retain them until he is paid."*

When the rent accrues, or even before it is due, if the lessor apprehends that the goods may be removed, he may have a writ of provisional seizure to the sheriff, who, by virtue thereof, takes possession of the goods and sells them in due course, as soon as the court has recognized the amount of rent for which they are liable.

Such a case is similar to that of an execution, in reference to which it has been properly held that where the levy is made before the commencement of proceedings in bankruptcy, the possession of the officer cannot be disturbed by the assignee. The latter, in such case, is only entitled to such residue as may remain in the sheriff's hands after the debt for which the execution issued has been satisfied. Such, we think, were the relative rights of the parties in this case. If the assignee apprehended that the sheriff would, by delay or negligence, waste the goods in his hands, he could either apply to the District Court of the parish for redress or aid in the premises, or perhaps file a bill in equity in the Circuit or District Court of the United States.

The next question is, what relief ought to be given to the complainant?

The goods have been sold by the assignees. They cannot be returned in specie. The supplemental bill prays that the assignees be decreed to account to the complainant for the full value of the property, and also such sum of money as he might be entitled to receive by reason of the wrongful acts of the assignees in the premises, and for further relief. The bill, it must be remembered, was originally filed for an injunction to prevent the assignees from disturbing the complainant in his possession of the goods. He

* Article 3185.

was not in laches in defending his rights. He is clearly entitled, under the circumstances of the case, to the full value of these goods, clear of all expenses, whether the assignees realized that value or not (limited, of course, by the amount of rent which he is entitled to be paid); and also to all the taxable costs to which he has been put by this litigation. As to any damages beyond that, if he has suffered any, we think that he ought not to recover them in this suit, as he, or the sheriff for his benefit, had an option to bring an action of trespass for damages, instead of resorting to a court of equity for relief. Damages are allowed, it is true, in certain cases, as incidental to other relief; but even if they could, in strictness, be awarded in this suit, we do not think that the case is such as to call for the interposition of the court in directing an inquiry as to damages.

DECREE REVERSED, with directions to the court below to proceed in the cause

IN CONFORMITY WITH THIS OPINION.