THE NATIONAL BANK AND LOAN COMPANY OF WATERTOWN, APPELLANT, v. GEORGE BABBITT, AS SHERIFF, ETC., RESPONDENT.

*Proceedings in bankruptcy — do not divest a lien acquired by a sheriff under a levy made prior thereto — Liability of a sheriff for delivering property levied on, to a special receiver appointed in bankruptcy proceedings.*

In the months of February and March, 1875, judgments were recovered against the Northern and New York Iron and Mining Company, and executions thereon were issued to the sheriff of Jefferson county, and levies were made thereunder. April 10, 1875, another execution issued upon a judgment recovered against the said company by the plaintiff was also delivered to him. March 16, 1875, a petition in involuntary bankruptcy was filed against the company, and an order to show cause, returnable on March thirtieth, with the usual restraining clause, was issued, and a copy served on the sheriff. On the return day it was referred

to a register to determine whether a sufficient number of creditors had joined in the petition.

April sixteenth, without notice, and on the petition of the company, an order was made appointing a special receiver to take the property, and mine and deliver ore to fill a contract of the company; no property to be delivered until the consent of all parties holding liens thereon should be filed with and approved by the register. The owners of all the executions issued to the sheriff, except the plaintiff, filed the requisite consent, and the sheriff delivered all the property levied on to the special receiver, who disposed of the same. Subsequently the proceedings in bankruptcy were dismissed, on the ground that the petition was not signed by the requisite number of creditors.

In an action by the plaintiff against the sheriff, subsequently commenced, *held*,

That the order of the bankruptcy court did not prevent the lien of the plaintiff's execution attaching to the judgment debtor's property, then held under levy by the sheriff.

That the injunction, in the order to show cause issued by the bankruptcy court, did not apply to the property levied upon, as to which the sheriff held the possession, and the title to so much thereof as was necessary to satisfy the executions held by him.

That it was the duty of the sheriff to sell such property under his levy.

That the sheriff had no right to deliver the property levied upon to the special receiver, and that he was liable to the plaintiff for the damage occasioned by his so doing.

APPEAL from a judgment entered upon a nonsuit directed at the circuit.

The action was brought to recover damages for the non-return of an execution, delivered to the defendant as sheriff of Jefferson county, in favor of the plaintiff against the Northern and New York Iron and Mining Company.

The defence was that the sheriff was enjoined and restrained from proceeding on the execution by an order of the court of bankruptcy, and that the property levied upon was taken from his county, without his consent, by a special receiver appointed by the court in bankruptcy in proceedings against the mining company.

The appellants recovered a judgment against the mining company April 10, 1875, for $1,337.36; execution on such was issued and delivered to the sheriff on the 12th day of April, 1875. Prior thereto, and on the 6th of February, 1875, the respondent, the sheriff, received an execution in favor of *G. H. Rounds* v. The Mining Company for $20.285; also on the same day an execution in favor of *Peter Wolf* v. The same Mining Company for fifty-nine dollars; also on February 20, 1875, one for $75.87

in favor of N. Y. S. L. and Trust Company. On the 27th of February, 1875, an execution in favor of Bagley & Sewall for $611.59 ; also one in favor of N. Y. T. and Loan Company for $7,820. On March 2, 1875, and on the third, twenty-second, and twenty-third of March other executions against the mining company and others were received by the sheriff. Upon the receipt of the first of the above executions the sheriff levied on all the property of the mining company in his county.

March 16, 1875, a petition in involuntary bankruptcy was filed against the mining company praying for an order of adjudication, and an order to show cause, returnable thirtieth March, why it should not be adjudged bankrupt was issued thereon.

The order to show cause was as follows:

## INVOLUNTARY BANKRUPTCY.

*In the District Court of the United States for the Northern District of New York.*

| | |
|---|---|
| IN THE MATTER OF THE NEW YORK IRON AND MINING COMPANY AGAINST WHOM A PETITION FOR ADJUDICATION OF BANKRUPTCY WAS FILED ON THE 16TH DAY OF MARCH, A. D., 1875. | *In Bankruptcy.* |

NORTHERN DISTRICT OF NEW YORK, *ss. :*

Upon filing proofs sustaining the allegations of the petition aforesaid, it is ordered, on motion of F. Lansing, of counsel for the petitioners, that the said The New York Iron and Mining Company do appear at this court, as a court of bankruptcy, to be holden at the judges' chambers, in the city of Syracuse, county of Onondaga, and State of New York, and district aforesaid, on the 30th day of March, 1875, at ten o'clock A. M., and show cause, if there any be, why the prayer of said petition should not be granted ; and the said The New York Iron and Mining Company and all other *persons are hereby enjoined* and restrained in the

meantime, and until the further order of the court, from *making any transfer or disposition* of any property of the said The New York Iron and Mining Company, not excepted from its operation by the act, entitled "an act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1867, or any amendment thereto, and from any interference therewith, except for its security and preservation.

It is further ordered that a copy of said petition, together with a copy of this order, be served on said The New York Iron and Mining Company by delivering the same to the president, secretary or treasurer thereof, personally, or by leaving the same at their usual place of abode, in said district, at least five days previous to the day herein required for its appearance.

Witness, the Honorable WILLIAM J. WALLACE, judge of said court, and the seal thereof, at Utica, in said district, on the 16th day of March, A. D., 1875.

[L. S.]

WINFIELD ROBBINS,
*Clerk of District Court for said district.*

Upon the return of the order The Northern New York Iron and Mining Company appeared and answered the petition, and denied that the petitioning creditors were one-fourth of the creditors of the said company, and on the same day an order was made referring it to a register to ascertain and determine whether one-fourth or sufficient creditors in number had assented to the petition. On the 16th of April, 1875, without notice to creditors, and on the petition of the mining company, an order was made in said bankruptcy proceedings, whereby George W. Flower was appointed special receiver of the alleged bankrupt estate upon filing with the register proper security, to be approved by the register, which order authorized the receiver ,to mine and deliver ore to fulfill a contract, made by the company with The Rochester Iron and Mining Company ; none of said property to be delivered until the consent of all the parties holding liens thereon should be filed with, and approved by the register.

The receiver's bond was approved and filed 21st of April, 1875. The owners of all the judgments and executions received by the

sheriff, prior to the appointment of the special receiver, except the plaintiff, signed and filed with the register, the consents provided for in said order appointing the receiver, whereby they consented that the property levied upon might be delivered to the said special receiver. The sheriff thereupon immediately surrendered to the special receivers possession of all the property of the alleged bankrupt which he had levied upon as aforesaid. August 3, 1875, upon a petition of several of the creditors (not including plaintiff), and upon the report of the register that the requisite number of creditors had not joined in the petition of bankruptcy, an order was made dismissing the petition in bankruptcy and dissolving the injunction order made 16th of March, 1875, as aforesaid. This action was commenced the 14th of August, 1875. The mining company owned real estate in Jefferson county, where plaintiff's judgment was recovered. Several of the executions in the hands of the sheriff, prior to that of the plaintiff's, were satisfied by the sheriff, the plaintiffs in which executions had joined in the consents aforesaid. The plaintiff offered to show " that there was ample and sufficient property of the defendant in Jefferson county, and which came into Jefferson county, and was in said county during the life of the plaintiff's execution, to satisfy all the executions in the sheriff's hands and the plaintiff's execution." This was objected to and excluded, and plaintiff excepted.

At the close of the evidence the court held that the plaintiff could not maintain this action, upon the ground that the sheriff being restrained by the order of the District Court of the United States had no time within sixty days, the lifetime of the execution, in which to levy under it.

The court then directed a nonsuit, upon which a judgment has been entered.

*John Lansing,* for the appellant. The respondent, as sheriff, not having returned this execution within the sixty days, as required by law, is *prima facie* liable to the plaintiff for the whole amount due on the judgment. (*Pardee* v. *Robertson*, 6 Hill, 550; *Ledyard* v. *Jones*, 3 Seld., 550; *Brookfield* v. *Remsen*, 1 Abb. Dec., 210; *Humphrey* v. *Hathorn*, 24 Barb., 278; *Dolson* v. *Saxon*, 11 Hun, 568; *Swezey* v. *Lott*, 21 id., 481; *Bow-*

man v. Cornell, 39 Barbour, 69; Paige v. Willett, 38 New York, 28.) The defendant, by the receipt of the executions and the levy he made by virtue thereof, obtained a lien on the goods of the defendant in the executions prior to the commencement of the proceedings in bankruptcy. (3 R. S. [6th ed.], 625, § 13; Roth v. Wells, 29 N. Y., 471; Hale v. Sweet, 40 id., 97; Williams v. Schelley, 37 id., 375; In re Stockwell, 18 Nat. Bky. Reg., 144 [U. S. Dist. Ct., N. D. of N. Y.]; Herman on Ex., 10, 173, 179, 260, 261, 279, and cases cited.) A levy that is good and creates a valid lien under the State laws is valid even in a bankruptcy court. (Herman Ex., 1, 280; Rankin v. Scott, 12 Wheat., 179; 7 Am. Law Reg. [N. S.], 204; In re Sheriff [U. S. Dist. Ct., E. D., N. Y.], 7 Am. L. Reg., 206, note; In re Donaldson [Penn. U. S. D. Ct.], 7 id. [N. S.], 213; In re Bernstein, 34 How., 289.) By the delivery of the execution to the sheriff, it became a lien upon the personal property of the judgment debtor, although no levy was made under it. (3 R. S. [6th ed.], 625; Camp v. Chamberlain, 5 Denio, 205; In re Stockwell, 18 Nat. Bky. Reg. [U. S. Dist. Ct., N. D., N. Y.], 144; Ray v. Birdseye, 5 Denio, 619; Roth v. Wells, 29 N. Y., 471; Hale v. Sweet, 40 id., 97; Williams v. Shelby, 37 id., 375.) The bankruptcy proceeding in no wise interfered with the sheriff's right of possession and disposition of the property. (Matter of Bernstein, 34 How., 289; Marshall v. Knox, 8 N. B. R., 104; Wilson v. Child, id., 527; Ansonia, etc., v. Babbitt, 8 Hun, 161. Doctrine affirmed in Court of Appeals. United States Courts have no jurisdiction to enjoin a sale by an officer on process issued from State courts. (Herman on Executions, 281; In re Cobasra, 1 Wash., 232; City Bank v. Shelton, 2 Blatch., 14; Sawyer v. Gill, 3 W. & M., 97; Brown v. Swan, 10 Pet.. 497; Wynn v. Wilson, Hemp., 698; Marshall v. Biberly, 5 Wheat., 313; Ruggles v. Swinton, 3 Bin., 235; McKim v. Voorhies, 7 Cranch, 979; In re Hopkins, 2 Curtis C. C., 567; Logan v. Lucas, 59 Ill., 237· Munson v. Houson, 34 id., 422.)

P. C. Williams and H. E. Morse, for the respondent. The court has power, at any time after the filing of a petition, to restrain by injunction, any interference with the property and assets of the

bankrupt by execution or otherwise. (*In re Wallace*, 2 B. R. [U. S. Dist., Oregon], 134; *In re Ulrick*, 8 id. [U. S. Dist., S. D. of N. Y.], 15; *In re Mallory*, 6 id. [U. S. Dist., Nevada], 22; *In re L. B. M. Co.*, id. [U. S. Dist., Nevada], 252; *Irving* v. *Hughes*, 2 id. [U. S. Cir., E. D. of Penn.], 62; *In re Fuller*, 4 id. [U. S. Dist., Oregon], 115.) The sheriff of a State court may be a party to proceedings. (*In re Bernstein*, 1 B. R. [U. S. Dist., S. D. of N. Y.], 199; *Jones* v. *Leach*, id. [U. S. Dist., S. D. of Miss.], 595.) The injunction may be granted without notice to the adverse party. (*Irving* v. *Hughes*, 2 B. R. [U. S. Cir., E. D. of Penn.], 62; *In re Muller* v. *Brentano*, 3 id. [U. S. Dist., Oregon], 339.) The filing of the petition transferred all the property to the custody of the Bankrupt Court, incumbered only by such liens as had attached thereto at time the petition was filed. Whenever those liens were removed for any reason, bankruptcy took the property relieved of them, in preference to subsequently recovered judgments and subsequently issued executions. (*In re —— Klancke*, 4 B. R. [U. S. Dist., E. D. of N. Y.], 648; *Johnson* v. *Rogers*, 15 id. [U. S. Dist., N. D. of N. Y.], 1; *In re Brisenthal*, id. [U. S. Cir., N. D. of N. Y.], 228; *In re Badenheim*, id. [U. S. Cir., S. D. of Miss.], 370.)

HARDIN, J.:

When the sheriff received the plaintiff's execution, on the 12th of April, 1875, he also held several executions in favor of other creditors against the mining company, the defendant in the executions, and in virtue of the prior executions the sheriff had made a levy upon considerable property of the execution debtor. The levy was made prior to any proceedings in bankruptcy, and all that property so under levy was constructively in the possession of the sheriff, and not the property of the insolvent. (*Ansonia Brass, etc., Co.* v. *Babbitt*, 8 Hun, 157. Opinion by TALCOTT, J.)

Although the case was reversed by the Court of Appeals, upon an appeal from a second judgment, the opinion of that court, as delivered by ANDREWS, J., sustains this principle.

By delivery of the execution of the plaintiff to the sheriff on the 12th of April, 1875, the plaintiff acquired a lien upon the property then held by the sheriff (subject to prior executions),

and upon all the other property in the county of Jefferson belonging to the execution debtor,. except as against *bona fide* purchasers in good faith.

The title of the debtor was·not divested by filing a petition in bankruptcy, either to the personal or real estate. (U. S. Statute, § 5044; *Hampton* v. *Rouse*, 22 Wall. [U. S. R.], 273.

The order of 16th March, 1875, made by the District Court in terms restrained the sheriff " from selling or taking any further proceedings to sell or dispose of or interfering with the property of the Northern New York Iron and Mining Company, * * * or in any manner intermedling or interfering with the property of the said The Northern New York Iron and Mining Company, until the further order of the court."

This order was served upon the sheriff soon after it was made. The only effect of the order was to stay the action of the sheriff upon executions ; it did not undertake to divest him of the property under his levy, and such could not be its effect, as we have before seen. This order did not vacate or destroy the liens obtained by the sheriff, and he was still entitled to maintain his levy upon the property of the judgment and execution debtor, the mining company.

Such was the *status* of the sheriff towards the property of the the mining company, when on the 12th of April, 1875, he received the execution issued upon the plaintiff's judgment. There is nothing in the terms of the order of the sixteenth of March which could prevent the lien of the plaintiff's execution attaching to the judgment debtors property then held under levy. (*Peck* v. *Tiffany*, 2 Comst., 451.) Nor to prevent the lien acquired by possession of the execution upon any other property in the county of Jefferson belonging to the debtor, when the execution was received by the sheriff. (*Hampton* v. *Rouse, supra;* 3 R. S., 625 [6th ed.]; *Camp* v. *Chamberlain*, 5 Denio, 205; *Ray* v. *Birdseye*, 5 id., 619; *Roth* v. *Wells*, 29 N. Y., 471; *Hale* v. *Sweet*, 40 N. Y., 97.)

It appears that a petition was presented April 16, 1875, to the District Court by the president of the Northern New York Iron and Mining Company, and an order was made for the appointment of a special receiver on that day. This order is to the effect that George W. Flower " be and is hereby appointed special receiver

*of the property and effects of said alleged* bankrupt upon filing," etc.

The receiver was authorized to mine and deliver such ore as may be necessary to fill a contract with the Rochester Iron Company, and to operate blast furnaces until the coal on hand is consumed.

This order contained a further provision that "none of the property to be delivered by said receiver until consent of all the parties *holding liens thereon shall* be filed with the register," etc.

Several of the execution creditors having given their consents, the sheriff surrendered to the special receiver the property held under his levy, and other property of the insolvent in the county was taken and converted. The plaintiff here gave no such consent, and the sheriff was in no way authorized by the plaintiff to surrender up the property under his levy, nor to let go any of the other property named or belonging to the insolvent and liable to the plaintiff's execution.

The case is destitute of any evidence showing any effort on the part of the sheriff to retain such property, to resist its being taken by the receiver or to recapture it; nor did he bring any action to recover it and to retain it for the purpose of making the plaintiff's execution therefrom.

The second count of the complaint alleges "that the sheriff duly levied the said execution on sufficient property *to fully satisfy* the same, and that he could have made the money on the said execution within sixty days by a sale thereof  *  *  *  but that he neglected to do so; through his neglect the plaintiff suffered damages in the amount of said execution."

Thus, it appears that this action is not only for a *failure to return the execution*, but for a failure of the sheriff to do his duty in the premises.

The evidence presented on the trial did not establish that the sheriff had done all his duty in the premises. As to this plaintiff he had no right to surrender the property; to allow the receiver to take that which was under his levy, or that upon which he acquired a lien by reason of the receipt of the plaintiff's execution. *The Ansonia Brass, etc., Co.* v. *Babbitt*, 8 Hun, 162, establishes a principle that was applicable to the facts as they were presented upon the trial.

It was there said "it was the duty of the sheriff to resort to all reasonable means to protect his levy, instead of which he appears to have surrendered the property without objection or remonstrance." (TALCOTT, J.) : and ANDREWS, J., in delivering the opinion of the Court of Appeals in the same case, says : "It was the duty of the sheriff to retain the possession and sell the property to satisfy the execution and to take all reasonable means to protect his levy ;      *      *      *      so, also, he would have had a remedy against the assignee after the property was turned over to him, upon his refusal to surrender it.      *      *      *      The sheriff had a right to use all necessary force to protect his possession."

Thus, it appears that upon the levy made by the sheriff in this case, he had the possession and title to so much of the execution debtor's property as was needed to satisfy the execution which came to his hands prior to the proceedings in bankruptcy, and that it was his duty to sell the property, and in doing so he would not have violated the terms of the order of the District Court, for that could not take effect upon property which belonged to the sheriff and not to the mining company. The District Court had no jurisdiction, even if the order had undertaken to divest the sheriff of his title and possession by a summary order, without notice to him or to the execution creditors. (*Marshall* v. *Knox*, 16 Wall., 551; *O'Brien* v. *Weld*, 92 U. S. R., 83; *Smith* v. *Mason*, 14 Wall., 419.)

The plaintiffs in the prior executions gave consents that the sheriff turn over the property to the special receiver, and it is insisted that thereby the executions became dormant, and that the plaintiff became entitled to the proceeds of any sales made. (*Dunderdale* v. *Sauvestre*, 13 Abb., 116; *Price* v. *Shipps*, 16 Barb., 585.) That question was not passed upon by the trial court, and when another trial shall take place the facts upon which the question depends may be more fully developed, and we, therefore, do not express any opinion in respect to it.

We think the trial judge fell into an error when he granted the motion for a nonsuit, and that the judgment should be reversed and a new trial ordered, with costs to abide the event.

Talcott, P. J. and Smith, J., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.