## In re KLEIN et al.

### (District Court, S. D. New York. June 2, 1902.)

1. BANKRUPTCY—JURISDICTION OF BANKRUPTCY COURT.

A general assignee of a debtor, who had possession and management of the estate for four months before the filing of a petition in bankruptcy against the assignor, during which time he made disbursements from the estate in payment of attorney's fees, does not confer jurisdiction on the court of bankruptcy to summarily determine his right to make such disbursements by filing his accounts in that court for allowance and settlement, where he objects to such jurisdiction before the entry of a final order on the merits, since the fund disbursed is not brought within the control of the court.

2. SAME—CLAIM OF ASSIGNEE FOR ALLOWANCE—CONSENT TO JURISDICTION.

A general assignee, who, after his assignor has been adjudged a bankrupt, accepts an appointment as temporary receiver of the estate, and turns over to himself as such receiver the funds in his hands as assignee, without retaining any sum therefrom as compensation for his past services, submits both such fund and himself to the jurisdiction of the court of bankruptcy with respect to his right to an allowance therefrom for such services.

3. SAME—COMPENSATION OF ASSIGNEE.

A general assignee, who was allowed by the creditors to retain possession of the assigned estate for several months before the filing of a petition in bankruptcy against his assignor, during which time he rendered services in preserving the estate, is entitled to the allowance of compensation therefor.

In Bankruptcy. On report of referee, as special commissioner, on the claims of a general assignee under the state law for disbursements and allowances.

Black, Olcott, Gruber & Bonynge, for trustee.
Walter D. Edmonds, for assignee.

ADAMS, District Judge. On the 3d day of December, 1900, Leon Klein and Samuel Klein, composing the firm of Leon & S. Klein & Co., while insolvent, made, under the State law, a general assignment for the benefit of their creditors to John W. Barber. The assignment was filed on the 4th day of December, 1900, and Barber accepted the trust and duly entered upon the performance of his duties.

On the 4th day of April, 1901, certain creditors filed a petition in this court, praying that the partners and the firm be adjudicated bankrupts. The adjudication was ordered, in conformity with the prayer, on the 26th day of June, 1901, and the matter was thereupon, in the ordinary course, referred to a referee for further proceedings.

On the 26th day of April, 1901, upon the application of one of the attorneys for the petitioning creditors for the appointment of a receiver to take charge of the estate pending the appointment of a trustee, several other creditors appeared and upon their request Barber was appointed as such receiver.

On the 4th day of May, 1901, Barber filed his accounts as assignee in this court, and, upon his motion, an order was made on the 15th day of May, 1901, referring them, with objections filed thereto on the part of certain creditors, to the referee, to be thereafter appointed,

as special commissioner, to pass upon the accounts and objections and to report what, if any, compensation should be granted to the said assignee for his services in the care and preservation of the property of the assigned estate and what sums, if any, should be allowed for payments made by him to attorneys in the administration of the estate as assignee.

In these accounts, the assignee charged himself with various sums received from the sale of merchandise, the collection of accounts, &c., during the four months of his administration, amounting to $5,656.05, and credited himself with disbursements made by him amounting to $2,232.06, leaving a balance in the hands of the assignee of $3,423.99. Among the disbursements charged were: Attorneys' fees, Dec. 3rd to Dec. 28th, 1900, $534.23; Dec. 31st, 1900, to January 14th, 1901, $120; Jany. 14th to 26th, 1901, $152.24; Jany. 31st, 1901, to Mch. 22nd, 1901, $83.50, amounting in all to $889.97. These were the subject of the objections stated. In an affidavit accompanying the motion papers, upon which the reference was ordered, a further claim was made by the assignee for his own services to the extent of $842, consisting of $282, which he alleged would have been allowed under the State laws, an additional sum of $500, which he alleged would be just in view of the character of his services, and a further sum of $60, which he alleged he had actually paid for clerk hire during the period, and had not charged in the disbursements. These claimed allowances also became the subject of objection on the part of the trustee, who was subsequently appointed.

On the 14th day of October, 1901, Barber presented his accounts to the court as temporary receiver and asked that they be passed and allowances be made to him and to his attorney for their respective services. These accounts were also referred to the referee, as special commissioner, by order dated the 25th day of October, 1901, to pass upon them and the objections filed thereto and to report to the court, what, if any, compensation should be granted to the temporary receiver and his attorney.

The matters, under the two orders, came on for hearing before the referee in November, 1901, and he thereafter made a report in which he found, inter alia, that the disbursements made to the attorneys in the assignment proceedings were excessive and would not have been allowed in the State Court, because not enough was done by the attorneys to warrant the charges made. He also found that an allowance of $219.70, instead of $889.97, would be proper and that the difference should be paid over.

The referee has made two reports in the matters. When the first report was filed, it appeared that his attention had not been called to the case of Trust Co. v. Comingor, 7 Am. Bankr. R. 421, 22 Sup. Ct. 293, 46 L. Ed. 413, and the matter was sent back to him for further consideration in view of that decision. His second report is made after such consideration and he states that he finds no reason for changing his views upon the matters in issue. Since the first decision, a formal objection to the jurisdiction of the court has been filed on behalf of Barber. It is now claimed that under the Comingor Case, no jurisdiction exists here to pass upon the matters involved,

because an objection has been made before the entry of a final order disposing of the matter. The determination of the question is not without difficulty in view of the initiation of the proceedings here by the assignee and the language used in the decision of the case cited. It was there said by Mr. Chief Justice Fuller, in writing for the court:

"The proceeding was purely summary. The determination of the merits on the facts was not open to revision by appeal or writ of error under the Bankrupt Law. If Comingor had been entitled to a trial by jury, he could not have obtained it as of right. The collection of the amounts found due would be enforceable, not by execution, but by commitment."

" 'We think that it could not have been the intention of Congress thus to deprive parties claiming property of which they were in possession of the usual processes of the law in defense of their rights.' Marshall v. Knox, 16 Wall. 556, 21 L. Ed. 484; Smith v. Mason, 14 Wall. 419, 20 L. Ed. 748. * * *"

The trustee urges that the case at bar is distinguishable from the Comingor Case in that the assignee there was ruled into court and objected to the jurisdiction from the beginning, while here the assignee has submitted himself to the jurisdiction of the court in the most unequivocal way and must consequently abide by its orders. It is true that Barber sought a decision of this court upon his accounts and among the items were the disbursements made to his attorneys, but the question remains: did he bring the funds represented by the items within the control of the court? There can be no doubt that the court acquired full jurisdiction of such of the bankrupt estate as was in the possession of or under the control of the assignee when the petition was filed, but if the funds had been disbursed before that time and had passed beyond the control of the assignee, it does not seem that they formed a part of the bankrupt estate which fell under the jurisdiction of this court, even though the assignee submitted himself to the jurisdiction with respect to his accounts. If there were reason to believe that the charges for the disbursements were merely colorable, the court would doubtless have authority to determine in a summary way, even as to a third party, whether a resort to the State Court would be necessary to determine the title to the funds (Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Mueller v. Nugent, 7 Am. Bankr. R. 224, 22 Sup. Ct. 269, 46 L. Ed. 405); but as it appears that the funds were actually, though perhaps improvidently, disbursed, to hold the assignee subject to commitment would seem to fall within the inhibition of the principle applied in the Comingor Case. The order to pay over should not, therefore, be made as to the disbursements to the attorneys, but the trustee will take such action for their recovery as may seem to him proper.

The referee has also reported adversely to the allowance of any compensation to Barber for his services as assignee on the ground that "instead of preserving the estate, the assignee, for such reasons as are best known to himself, has diminished the estate which he was bound to protect * * * and that he is not in a position to ask for any allowance, for his personal services." The same contention with respect to jurisdiction, which was made by Barber concerning

the disbursements to the attorney, is not available to him in this connection, because he did not, as the assignee did in the Comingor Case, pay to himself and expend the amount of his commissions in reliance upon the belief that he was entitled to the amount thereof on final settlement. Here he accepted the appointment as temporary receiver of this court and turned over to himself in such capacity the funds which he had in hand as assignee, including the amount which he has since claimed for his services in that respect. He thus subjected the fund and himself to the jurisdiction of this court and it would be anomalous if he could still successfully insist upon a right to have this claim adjudicated elsewhere. I hold that the claim is fully before me upon the merits. I do not, however, agree with the referee in his conclusion that there should be no allowance for the services. Beyond making charges against the estate which are subject to criticism, no wrongdoing has been shown on the part of the assignee and he has undoubtedly rendered services in preserving the estate. The creditors permitted him to remain in the possession of the estate for several months during which time he was administering it in their interest, and they are not in a position to successfully assail a proper charge of this kind. I think $200 will be sufficient to compensate him for such services and I allow him that sum.

The report in other respects, including an allowance for the services as temporary receiver $75, and for attorney's services to the receiver $50, will be confirmed.